Township of Ridley, Appellant *v.* Pipe Maintenance Services, Inc., Appellee.

Argued June 4, 1984, before Judges ROGERS, COLINS and BARBIERI, sitting as a panel of three.

*Peter J. Rohana, Jr.,* for appellant.

*Nicholas Guarente,* for appellee.

OPINION BY JUDGE ROGERS, June 29, 1984:

The Township of Ridley has appealed from an order of the Court of Common Pleas of Delaware County entering judgment against the township and in favor of the appellee, Pipe Maintenance Services, Inc. (PMS), in the amount of $103,643.53 plus interest, for materials and services expended on the township's sanitary and storm sewer systems.

On July 27, 1978, Ridley Township awarded PMS a contract for the performance of maintenance and repair work on the township's sewer systems.[1] The contract provided that the consideration for the work should not exceed $26,620. In September of 1979, heavy rains caused a creek in the township to overflow, resulting in "shin-deep" water on a public street named Quince Lane. Township officials directed PMS to examine and correct the Quince Lane situation, which it proceeded to do. By letter to the township dated October 3, 1979, PMS explained the steps it was taking to alleviate the problem and stated that "[w]ork so far completed as of September 28th, is estimated at between $31,000 to $32,000. . . . We respectfully request an advancement of $25,000 to off-

---

[1] The contract was executed on December 15, 1978 and, by its terms, covered a period of time from the date of execution through December 31, 1979.

set our expenses so far.'' The township authorized this payment and issued to PMS a $25,000 check, dated November 15, 1979, from its Capital Improvement Fund. The check was signed by four township officials and contained a memo stating that the payment was for ''Partial Payment. Stream clearance, drainage repairs & restoration. Quince Lane.'' PMS thereafter completed its work on the Quince Lane project.

Between October and December of 1979, PMS submitted to the township bills totalling $103,643.53 for work it completed on various projects in pursuance of its contract with the township. The township refused payment and refused to acknowledge a debt to PMS for any sum greater than the $1,620 difference between the contract ceiling price of $26,620 and the $25,000 advanced by the township on the Quince Lane project.

In May of 1980, PMS brought an action in assumpsit against the township in the Court of Common Pleas of Delaware County seeking relief under the contract, or in the alternative, on a quasi-contract claiming unjust enrichment of the township. The trial court concluded that PMS could not recover the damages sought under the original contract because of the maximum price of $26,620 stated in that instrument; but that PMS had established a right of recovery in quantum meruit in the amount of $103,643.-53 plus interest from December 28, 1979, which sum the court held reflected the fair and reasonable value of the labor and materials supplied.

The township first alleges that the trial court erred as matter of law in concluding that PMS had established a right to recover in quantum meruit.

The trial court based its conclusion that PMS was entitled to recover the sum claimed on the holding of *J.A. & W. A. Hess v. Hazle Township*, 484 Pa. 628,

428

400 A.2d 1277 (1979). In *Hess,* a private contractor was awarded a contract for the delivery of one hundred tons of gravel at $3.50 per ton. The township later requested and the contractor delivered more than 6,000 tons for which the township refused to pay because it was not called for in the contract. The Pennsylvania Supreme Court held the township liable in quantum meruit for the full cost of the gravel delivered because the gravel was delivered pursuant to the underlying contract; the township had the authority to legally contract for the benefit it received; the township had ample opportunity to reject the gravel, which it failed to do; and there was no evidence of subterfuge or an assumption of the risk by the contractor for the initially unanticipated services. The Supreme Court did not allow recovery under the written contract because the difference in the amount of gravel stated in the contract and the amount actually delivered was too great to permit payment under the contract without ignoring statutory bidding and contract provisions. We agree with the trial court that *Hess* is controlling in this instance and requires judgment for PMS.

The recent case of *Township of Ridley v. Haulaway Trash Removal, Inc.,* 68 Pa. Commonwealth Ct. 16, 448 A.2d 654 (1982) further supports the trial court's decision. There, we held that where Ridley Township orally requested Haulaway's trash removal services and later knowingly accepted and made several partial payments for those services, it was liable in quantum meruit for the cost of all services rendered. We relied on the reasoning in *Hess* and rejected the township's argument that because statutory bidding and contract provisions were not complied with, thus rendering the contract invalid, quantum meruit recovery was inappropriate. In this regard, the Supreme Court in *Hess* adopted and quoted the following language

from *Luzerne Township v. Fayette Co.*, 330 Pa. 247, 199 A. 327 (1938):

> [W]here a municipality or other local agency of government has voluntarily accepted and retained the benefits of a contract which it had the power to make but which was defective in the method of its execution and consequently invalid, the party who, by furnishing labor or material, has conferred such benefits may recover compensation therefor in a suit, not on the invalid contract itself, but upon a quantum valebant, quantum meruit, or for money had and received. . . .

*Hess* at 633, 400 A.2d at 1279. The argument that PMS should not recover because the agreement that work be done at Quince Lane violated statutory bidding requirements and was consequently invalid is therefore contrary to law and without merit.

In *Haulaway Trash Removal,* we also rejected the argument that recovery was improper because the township officials who orally contracted with Haulaway acted beyond the scope of their authority by not having the agreement ratified by the Board of Commissioners on the ground that the township's partial payment for Haulaway's services was tantamount to ratification by the governing body.

Ridley Township's reliance on the case of *Hazle Township v. City of Hazleton,* 45 Pa. Commonwealth Ct. 370, 407 A.2d 893 (1979) is misplaced. There the City of Hazleton constructed a sewer on the boundary street between it and the township and sued the township for a share of the cost of construction on a quantum meruit theory. Section 2985 of the Third Class City Code,[2] which controlled the case, directed that municipalities enter into agreements regarding the re-

---

[2] Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §37985.

pair and maintenance of boundary line streets. However, no such agreement existed and the township had neither assented to the construction of the sewer nor indicated any intention to contribute to its cost. We held that in the absence of any agreement, express or implied, to share the construction costs, recovery could not be had. *City of Hazleton* is clearly distinguishable on the basis that in this case there was a written contract for PMS to perform maintenance and repair services on the township's sewer systems and an oral agreement, grounded in the written contract, for the restoration work at Quince Lane. All of the work performed by PMS was, as found in the trial court, done pursuant to the underlying written contract.

The township next contends that if we find that quantum meruit recovery is otherwise available to PMS, such recovery should nonetheless be denied because the Supreme Court's holding in *Hess* is to the effect that quasi-contract recovery may be denied where evidence supports a finding that the municipality was without authority to legally contract in the first instance for the benefit conferred; that the benefit was conferred not upon the municipality but upon a private person; that the contractor, not the municipality, had assumed the risk under the contract for the unanticipated work; or that subterfuge was present and was obvious to both the contractor and the municipality. The township here argues that there is substantial evidence of subterfuge, conspiracy and fraud and that benefits were conferred to private landowners and not to the township.

We agree with the trial court that Ridley Township failed to present evidence sufficient to support a denial of quantum meruit recovery on the grounds alleged. While there was some evidence that the township officials who made the decision to order restora-

tion work at Quince Lane did so with knowledge that the cost would exceed the contract ceiling price and would thereby violate the competitive bidding requirements of Section 1802 of the First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §56802, this evidence was not so clear as to compel the inference that PMS's conduct was conspiratorial or fraudulent. Additionally, it is apparent from the record that the township as a whole benefitted by the Quince Lane project.

Although the original contract had a ceiling price of $26,620, the trial court properly held that it would, under these circumstances, be unjust and unreasonable for the township to accept the benefit of services valued fairly at $103,643.53 without paying for them.

Order affirmed.

## ORDER

AND Now, this 29th day of June, 1984, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is affirmed.